JUDGE PRESKA

Scott D. Baker
Emily B. Kirsch (EB 4216)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Attorneys for Plaintiff

Of Counsel:
William R. Overend

07 CIV 8421

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PALADYNE SYSTEMS, INC., a Delaware Corporation,

   Plaintiff,

v.

STPENABLE, LTD., a UK company,

   Defendant.

---

: Case No.:
:
:
:
:
: **COMPLAINT**
:
: **JURY TRIAL DEMANDED**
:
:
:
:
:

SEP 28 2007
U.S.D.C. S.D. N.Y.
CASHIERS

  Plaintiff, Paladyne Systems, Inc., successor in interest to Paladyne Systems, LLC, ("Paladyne") by it attorneys, Reed Smith, LLP, for its complaint, alleges as follows:

### INTRODUCTION

  1. Defendant STPenable, Ltd. ("STPenable") is a consulting software developer to Paladyne who, despite contractual obligations not to misuse or disclose Plaintiff's confidential information and trade secrets, abused its access to copy or otherwise unlawfully

replicate a key element of one of Plaintiff's highly successful software products. STPenable has misused, disclosed and distributed Paladyne's confidential information and, armed with Paladyne's valuable trade secrets, proceeded to compete unfairly against Paladyne, in Paladyne's market, with Paladyne's own product.

2.  Moreoever, Paladyne is informed and believes and thereon alleges that STPenable has now entered into a letter of intent for a business combination with Advent Software, Inc. ("Advent"), which combination would include the sale of Paladyne's product and/or product illegally derived therefrom. Advent is a potential competitor, business partner and customer of Paladyne. In fact, less than a year ago, Paladyne was involved in its own confidential negotiations for a strategic business combination with Advent and proceeded to due diligence although a deal never materialized. To allow STPenable to improperly disclose Paladyne's trade secrets to Advent, and profit from that misappropriation through its business combination would be devastating to Paladyne.

3.  The parties' written contract includes an arbitration provision, and Paladyne has thus initiated an arbitration against STPenable. Notwithstanding the pending arbitration, STPenable continues to breach confidentiality obligations, misappropriate Paladyne's trade secrets, unfairly compete with Paladyne and interfere with Paladyne's present and prospective business advantage.

4.  In this action, Paladyne seeks injunctive relief against STPenable to prohibit it from continuing the unlawful conduct set forth more fully below so that the arbitration will not be rendered ineffectual. Nothing herein is intended to waive the arbitration provision on the Agreement.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 29 U.S.C. §1332(a) as there is diversity between the parties and the amount in controversy exceeds $75,000.

6. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this district. The Agreement at issue requires New York as the situs for the resolution of the dispute, provides for the application of New York law, and the Agreement was performed, and the activities of defendant occurred, at least in part, in this judicial district.

## PARTIES

7. Paladyne is a Delaware corporation, with its principal place of business at 747 Third Avenue, New York, NY 100217. Paladyne is the successor in interest to Paladyne Systems, LLC. Paladyne sells a suite of software products that provide technology and support infrastructure for hedge fund managers, fund administrators and prime brokers.

8. Defendant STPenable, Ltd. ("STPenable") is a UK company, with a principal place of business at Imperial House, 18 Lower Teddington Road, Hampton Wick, Kingston upon Thames, Surrey KT1 4EU, England. STPenable is a software development company.

## FACTS

Paladyne Systems, Inc.

9. Paladyne develops, markets, licenses and supports a suite of software products to support both front, middle and back office hedge fund operations. Paladyne was formed in 2005 through an acquisition of its technology platform from a multi-billion dollar,

multi-strategy, US-based hedge fund, Alexandra Investment Management. Paladyne's customers include hedge funds, prime brokers and fund administrators.

10. Paladyne has grown exponentially since its inception, demonstrating that it has a valuable product offering and a successful business plan to penetrate an open market. Paladyne has approximately 75 employees. Its headquarters are in New York and it also has offices in New Jersey, London and Russia. Its revenues are expected to reach approximately $10 million in 2007, compared with approximately $2 million in revenues generated in its first full year of operation.

STPenable and Transformer

11. STPenable is a company based in the United Kingdom. Upon information and belief, David Wynter is the sole full-time director, employee and/or owner of STPenable.

12. When Paladyne initially acquired its base technology, a self-contained software tool developed by STPenable called Transformer was incorporated in one of the key products that is now marketed and sold under the name Paladyne Security Master. Transformer is a basic "ETL" program, meaning it receives information, extracts it from the source (typically a basic flat file), transforms it and loads it into a database. Today, there are other ETL products in the market and they are relatively inexpensive commodities. Because Transformer was already embedded in the base technology as purchased, Paladyne continued to use it and, as set forth more fully below, contracted with STPenable for ongoing integration and support of that product, for which STPenable has been paid substantial royalties.

Paladyne Security Master and the Golden Copy

13. Paladyne's Security Master product, developed especially for the hedge fund market, is a global repository of data about securities, including information such as the number of shares outstanding in a publicly traded company. Paladyne Security Master combines

multiple sources of data (e.g., Bloomberg, Reuters, and Interactive Data) into a single "Golden Copy" security database. The "Golden Copy" database stores both listed and non-listed security types and may be updated in real-time or on-demand as data becomes available from source vendors. Paladyne Security Master can then update and synchronize all internal systems used by a hedge fund to support all their trading, risk management, accounting and reporting activities.

14.  As used in Paladyne Security Master, Transformer receives large amounts of securities-related data from the leading market information feeds and allows this information to be first uploaded into certain "vendor copy" databases. This process is relatively straightforward; there is one vendor copy database for each of the major feeds. Transformer is then used a second time to prepare and compile the data from the several vendor copy databases to upload and populate the Golden Copy database.

The Solution Integrator Agreement

15.  As of November 1, 2005, Paladyne and STPenable entered into the Solution Integrator Agreement (the "Agreement"), which provides to Paladyne a non-exclusive license to use Transformer in its product and entitles Paladyne to certain technical support of Transformer. The Agreement further provides, among other things, for compensation to STPenable in the form of fees for the development work and the license. A true and correct copy of the Agreement is attached as Exhibit A to the declaration of Sameer Shalaby filed in support of Paladyne's Order to Show Cause for Temporary Restraining Order and Preliminary Injunction. To date, STPenable has received over $200,000 in compensation from Paladyne pursuant to the Agreement.

16.  Article 9 of the Agreement provides for the protection of the parties "Confidential Information," which includes "…all information relating to markets, customers, products, patents, inventions, procedures, methods, designs, source and object code data, programs, improvements and others words of authorship of the disclosing party…." Agreement,

¶9.1. Article 9 further provides that "[a] party shall not disclose or provide the other party's confidential information, including the existence of this agreement, to any third party without such party's express authorization ...." Agreement, ¶9.2.

17.  Until recently, the parties have generally operated successfully under the Agreement – or so it had seemed. In fact, the relationship was so successful that the parties have discussed various structures whereby STPenable and Paladyne would form a business combination. It was always understood that both entities would benefit from a business combination.

Advent Software, Inc.

18.  Paladyne is involved with a beneficial distribution and cross-marketing arrangement with Advent Software, Inc. ("Advent"). Advent develops, markets and sells various accounting software and consulting services to the investment management and hedge fund market and has approximately 4000 customers in that market sector. Paladyne is a distributor of Advent's "Geneva" accounting product. Paladyne markets Paladyne Security Master to customers of Geneva as a value-added compatible product. This synergy facilitates Paladyne's hedge fund market penetration significantly.

19.  In fact, the two companies' synergies were so great that in September 2006, Advent and Paladyne entered into confidential discussions regarding a possible business combination. Various structures were discussed, including Advent's purchase of Paladyne's entire business, as well as Advent's purchase of certain products or assets of Paladyne. These discussions proceeded into due diligence in which certain proprietary information was shared with Advent (pursuant to a non-disclosure agreement), but never materialized into a deal. As a result of this process, Advent was introduced to STPenable.

The Golden Copy and Other Security Master Technology Are Trade Secrets of Paladyne

20. Because its intellectual property is an extremely valuable asset, Paladyne goes to great lengths to protect its technology, including the proprietary intellectual property contained in the database schema of the Golden Copy. All potential new customers must sign non-disclosure agreements to view the product in detail, and Paladyne adheres to a strict rule that copies of specification documents and all other documentation may be shown to prospective clients pursuant to an NDA, but are never given out and do not leave the premises of Paladyne's offices.

21. Paladyne's Security Master customers sign license agreements with extensive confidentiality provisions and restrictions on their use of the product. In particular, Paladyne's form license agreement includes the following mandatory language:

> "Client agrees that it will not itself, or through any parent, subsidiary, affiliate, agent or other third party, except as otherwise permitted hereunder or under any other agreement between Client and Paladyne: (a) sell, lease, license, or sublicense the Software or the Documentation to any third party; (b) decompile, disassemble, or reverse engineer the Software, or modify the Software in whole or in part; (c) write or develop any derivative software or any other software program based upon the Software or any Confidential Information; (d) provide, disclose, divulge or make available to, or permit use of the Software by any third party either directly or remotely unless the applicable third party licenses the Software directly or is otherwise authorized in writing by Paladyne but limited as described in such authorization; or (e) use the Software to provide processing services to third parties in a "service bureau" capacity including business process outsourcing and fund administration services. Additional restrictions on Client's permitted use of the Software are set forth in Exhibit B."

22. In addition, Paladyne's employees, consultants and agents who may have access to Paladyne's trade secrets are all subject to non-disclosure agreements. Paladyne's Computer Systems all conform to at least standard industry practice of security including password protection, firewalls and the like.

23. The technology that comprises the Golden Copy has substantial economic value as a result of its not being generally known in the industry.

NYLIB-453127.3

24.  Knowledge of Paladyne's trade secrets would be of enormous value to an entity seeking to enter this burgeoning market seeking to compete with Paladyne.

STPenable's Theft of the Golden Copy

25.  In early Spring 2007, Mr. Wynter told Vladimir Agranov of Paladyne that STPenable had entered a licensing agreement and was soon "going live" with Lipper in New York City. Paladyne is informed and believes and thereon alleges that the product being licensed to Lipper was STPenable's Transformer product *plus Paladyne's Golden Copy*, or a version based on Paladyne's proprietary technology. Paladyne is further informed and believes and thereon alleges that Mr. Wynter traveled to New York at least twice for the purpose of selling this stolen product.

26.  Paladyne is informed and believes and thereon alleges that STPenable, through access to the Golden Copy database and from other confidential information given to it in connection with its work for Paladyne, has improperly and unlawfully copied and/or replicated Paladyne's confidential and proprietary Golden Copy database and sold it as STPenable's own product. The Golden Copy is an important and proprietary feature in Security Master and contributes to the 500% increase in revenues Paladyne has experienced in the last year.

27.  When confronted by Paladyne, Mr. Wynter represented that he would have a brand new Golden Copy database created by an independent third party without any input from STPenable whatsoever and would make no further use of Paladyne's Golden Copy and/or any products STPenable had derived therefrom.

28.  Later in the summer of 2007, Paladyne learned from Mr. Wynter and Advent that STPenable had entered into licensing deal with Advent. Paladyne is informed and believes and thereon alleges that STPenable's license with Advent is similar to the one with

Lipper, including in that it misappropriates Paladyne's Golden Copy technology and licenses Paladyne's Golden Copy to Advent without Paladyne's consent.

29. On or about Friday, September 21, 2007, Mr. Wynter called Paladyne's CEO, Sameer Shalaby, and stated that STPenable would definitely not be entering into an agreement with Paladyne of any sort. Mr. Wynter further stated that STPenable instead intended to partner with Advent and had already entered into a letter of intent with Advent to do so. That deal would include the sale to Advent of Paladyne trade secrets and proprietary confidential information as captured in the Golden Copy database.

Irreparable Harm

30. STPenable's misappropriation of Paladyne's proprietary intellectual property in connection with potential transfer of that technology to third parties, including Advent deal creates an imminent threat of irreparable harm to Paladyne. Specifically, the represented deal would entail the improper disclosure of the Golden Copy – not only in its final form, but with all the underlying technology, programming, stored processes and business logic – to a competitor, customer and strategic partner of Paladyne. This is a key trade secret of Paladyne.

31. The severe threat of irreparable harm caused by this improper disclosure of a trade secret is exacerbated by the fact that Advent markets in precisely the same space as does Paladyne. Indeed, Advent serves not only as a potential competitor to Paladyne, but also as potential partner and customer of Paladyne. Among other harms, Paladyne will lose considerable traction and market share when it can no longer market itself to Advent's accounting customers as a value-added compatible product, which currently accounts for a significant portion of Paladyne Security Master licenses. Instead, unless STPenable is enjoined, Advent would be able to offer those same products within Advent's own product offering, using intellectual property wrongfully disclosed by STPenable.

32. An injunction is needed against STPenable to prevent it from this and further misappropriation of Paladyne's intellectual property and from the imminent unlawful sale of this valuable asset to Advent or any other party poised to compete directly with Paladyne and steal Paladyne's market share.

33. Paladyne is informed and believes and thereon alleges that the foregoing actions of STPenable have been knowing, deliberate, willful, and in utter disregard of Paladyne's rights. As a direct and proximate result of STPenable's conduct set forth above, Paladyne has been injured and damaged in an amount to be proven.

34. STPenable's conduct is continuing, and will continue, unless enjoined by the Court.

35. Unless STPenable is enjoined from engaging in the wrongful conduct described above, Paladyne will suffer irreparable injury and further damage. Thus, it would be difficult to ascertain the amount of compensation which could afford Paladyne adequate relief for STPenable's acts, present and threatened, and Paladyne's remedy at law is not adequate to compensate for that harm and damage.

## FIRST CLAIM FOR RELIEF

### (Misappropriation Of Trade Secrets)

36. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

37. Paladyne's technology and confidential information, such as its code, stored processes, business logic and database schema that comprises its software products, including without limitation Paladyne Security Master and the Golden Copy database that is a key element of that product, constitutes confidential and proprietary information and trade secrets. Among other things, these trade secrets have independent economic value and are not

generally known to the public or to others who could have obtained economic value from the disclosure of use of the technology or information, and Paladyne took reasonable efforts to ensure the secrecy of this technology and information

38. STPenable had access to Paladyne's trade secrets pursuant to the Agreement, which imposed strict confidentiality and non-disclosure obligations on STPenable not to misuse or improperly disclose, distribute, or display Paladyne's confidential information in any way.

39. Despite the contractual and other obligations to safeguard the confidential information, STPenable has engaged in the foregoing wrongful acts, including copying or otherwise unlawfully reverse-engineering or rebuilding Paladyne's Golden Copy database, without Paladyne's consent, and selling it to Paladyne's customers and competitors, all to Paladyne's detriment.

40. Paladyne has been and will continue to be damaged by the unlawful conduct of STPenable.

41. Paladyne has been and will continue to be irreparably harmed unless STPenable is enjoined from this unlawful conduct. Paladyne has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Breach Of Written Agreement)

42. Paladyne repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

43. The Agreement is a valid and binding written agreement.

44. STPenable is bound by the Agreement, among other things, not to use or disclose any of Paladyne's confidential information, which includes, among other things, the Golden Copy.

45. Although Paladyne has performed all of its obligations under the Agreement, STPenable has breached its obligations of confidentiality under the Agreement, all to Paladyne's detriment.

46. Paladyne has been and continues to be damaged by the unlawful conduct of STPenable.

47. Paladyne has been and will continue to irreparably harmed unless STPenable is enjoined from this unlawful conduct. Paladyne has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

#### (Common Law Unfair Competition)

48. Paladyne repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

49. STPenable had access to Paladyne's key intellectual property by virtue of the Agreement.

50. In breach of the confidentiality provisions of the Agreement and other obligations, STPenable has unlawfully misappropriated confidential information of Paladyne, including the Golden Copy database, in order to further its own commercial advantage.

51. STPenable is unfairly, unlawfully and in bad faith competing with Paladyne within Paladyne's core market by marketing, licensing and selling Paladyne's own product, which was unlawfully obtained by STPenable.

52. STPenable's actions have caused and will continue to cause actual injury and damage to Paladyne.

53. Paladyne has been and will continue to be, irreparably harmed unless STPenable is enjoined from its unlawful conduct. Paladyne has no adequate remedy at law.

WHEREFORE, Paladyne prays for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Paladyne respectfully requests judgment in favor of it and against STPenable as follows:

1. That judgment be entered in favor of Paladyne and against STPenable on all counts;

2. That the Court order STPenable to account to Paladyne for all gains, profits and advantages derived from STPenable's wrongful acts;

3. That the Court order an award of all damages sustained by Paladyne as a result of STPenable's misappropriation of trade secrets, breach of contract, and unfair competition;

4. That the Court preliminarily and permanently enjoin STPenable, Ltd., and its directors, officers, agents, servants, affiliates, employees, and attorneys, and those persons in active concert or participating with them from:

(a) using or disclosing Paladyne's trade secrets or confidential information, including Paladyne Security Master and Golden Copy, in any manner, except as is necessary and authorized in connection with the performance of STPenable's obligations to Paladyne under the Agreement;

(b) selling, licensing, offering for sale or license, promoting or exploiting any product, technology or service based on or incorporating any of Paladyne's trade secrets or confidential information, including Paladyne Security Master and Golden Copy;

(c) developing, consulting or advising concerning any software or other products for any third person where such activities would be based on or derived from Paladyne's trade secrets or confidential information, including Paladyne Security Master and Golden Copy;

(d) possessing, using, disclosing, or transmitting for any purpose, including solicitation, any confidential, proprietary or trade secret information contained in or derived from records or data of Paladyne, including Paladyne Security Master and Golden Copy, except as is necessary and authorized in connection with the performance of STPenable's obligations to Paladyne under the Agreement; and

(e) otherwise unfairly competing with Paladyne;

NYLIB-453127.3

  5.  That the Court order an award of Paladyne's reasonable attorneys' fees and costs incurred in bringing this action;

  6.  That Paladyne be awarded such other relief as this Court may deem just and proper.

DATED:  New York New York
     September 28, 2007

*[signature]*
Scott D. Baker
Emily B. Kirsch (EB 4216)
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022-7650
Telephone: 212.521.5400
Facsimile: 212.521.5450
sbaker@reedsmith.com
ekirsch@reedsmith.com

Of Counsel:
William R. Overend
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone: 415.543.8700
Facsimile: 415.391.8269

*Counsel for Plaintiff*
*Paladyne Systems, Inc*

NYLIB-453127.3